IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **JP MORGAN CHASE BANK,** | : |
| | : |
| Appellant, | : |
| | : |
| | :  7:07-CV-158-HL |
| v. | : |
| | : |
| **ELL 11, LLC,** | : |
| | : |
| Appellee. | : |

**O R D E R**

Before the Court is an Appeal (Doc. 1) from orders of the United States Bankruptcy Court for the Middle District of Georgia denying Appellant's Motion to Pay Attorneys' Fees Pursuant to 11 U.S.C. § 506(b) on May 10, 2007 (the "Motion"), as amended by the Supplement to the Motion filed on June 4, 2007 (the "Supplement," together with the Motion, the "Amended Motion")  and the Motion to Amend Findings of Fact Pursuant to Federal Rule of Bankruptcy Procedure 7052 on June 28, 2007.  On appeal, Appellant contends that the Bankruptcy Court erred as a matter of law by denying attorney fees pursuant to 11 U.S.C. § 506(b).

Having considered the record, the briefs filed by both parties, and the relevant case law, this Court holds that the June 15, 2007 order denying the Motion to Pay

1

Attorney Fees Pursuant to 11 U.S.C. § 506(b) was error as a matter of law.

I.  **BACKGROUND**

The undisputed facts are as follows.[1] Appellee-Debtor ELL 11, LLC, d/b/a Thomasville Honda ("the Debtor"), is a car dealership that obtained inventory financing from Appellant, JP Morgan Chase Bank ("Appellant"). The documents governing the financing contract contained language allowing Appellant to recover all costs and expenses, including reasonable attorney fees, in connection with the enforcement of the loan. On February 19, 2007 Appellant notified the Debtor that it was suspending its line of credit under the agreement. The notification, however, failed to inform Debtor of its intention to invoke the attorney fee's provision in accordance with O.C.G.A. § 13-1-11 (1982), which provides the Debtor a right to pay the full amount due (principal and interest) within 10 days of said notice in order to avoid attorney's fees.[2] Thereafter, on

---

[1] The Courts conclusion that the bankruptcy court erred as a matter of law in its application of 11 U.S.C. § 506(b) is not dependant upon the documents Appellant sought to introduce in the Motion to Amend Findings of Fact Pursuant to Federal Rule of Bankruptcy Procedure 7052. Consequently, neither those documents nor the arguments raised by Appellant in light of those documents are discussed.

[2] O.C.G.A. § 13-1-11 states, in relevant part, "...[T]he holder of the note... shall... notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney fees."

February 20, 2007, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The Bankruptcy Court subsequently authorized the Debtor to sell substantially all of its assets and pay certain debts from the proceeds of the sale, including the undisputed portion of a debt owed to Appellant. However, Debtor disputed whether Appellant was permitted to receive attorney fees and related expenses under 11 U.S.C. 506(b). Appellant then filed the Amended Motion to pay attorney fees pursuant to 11 U.S.C. § 506(b).

On June 6, 2007, the Bankruptcy Court held a hearing to consider the Amended Motion. At the hearing, the parties stipulated that: 1) the loan documents contained language obligating the Debtor to pay reasonable attorney fees, and 2) the Appellant failed to give the 10-day notice letter in accordance with O.C.G.A. § 13-1-11. Additionally, no objection was raised to the amount or reasonableness of the attorneys' fees or expenses sought, which was $ 24,805.78.[3] After hearing arguments on both sides, the Bankruptcy Court issued an order denying the Amended Motion on June 15, 2007.

In denying the Amended Motion, the Bankruptcy Court held that before awarding reasonable attorney fees to an oversecured creditor pursuant to 11 U.S.C. § 506(b), it

---

[3] Appellant also requests additional attorney fees and expenses in the amount of $686.00 incurred in this appeal. Debtor, in its reply brief, did not contest the reasonableness of this amount.

must first consider whether or not that creditor has an allowable claim under 11 U.S.C. § 502. Determining that the Appellant did not have an allowable claim under 11 U.S.C. § 502, the Bankruptcy Court did not award the reasonable attorney fees pursuant to 11 U.S.C. § 506(b).

Following the June 15, 2007 denial of the Amended Motion, the Appellant filed its Motion to Amend Findings of Fact Pursuant to Fed. R. Bankr. P. 7052 relating to the Court's order denying the Amended Motion, seeking to introduce numerous documents identified in the Amended Motion. On July 18, 2007, after hearing arguments on both sides, the Bankruptcy Court entered an order denying the Motion to Amend Findings of Fact. On July 27, 2007, Appellant timely appealed both the order denying the Motion to Amend and the Motion to Amend Findings of Fact.

## II. STANDARD

When entertaining an appeal from a bankruptcy court, district courts are entitled to "affirm, modify, or reverse a bankruptcy court's . . . order" and will accept its findings of fact unless those findings are clearly erroneous. Fed. Bankr. R. 8013 (West 1984 & Supp. 2004); See *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990); *see also* *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir. 1992). A district court is not authorized to make independent findings of fact. See *In re Sublett*, 895 F.2d at 1384.

In contrast, conclusions of law, including a bankruptcy court's interpretation and application of the Bankruptcy Code, are reviewed *de novo.* See *In re Chase & Sanborn*

*Corp.*, 904 F.2d 588, 593 (11th Cir. 1990). This Court, therefore, owes no deference to a bankruptcy court's interpretation of law or its application of the law to the facts. *Goerg v. Parungao*, 930 F.2d 1563, 1566 (11th Cir. 1991).

## III. DISCUSSION

This case presents the question of whether after the filing of a debtor's Chapter 11 petition, an oversecured creditor is entitled to attorney fees actually incurred post-petition when the creditor failed to comply with the notice requirements of O.C.G.A. § 13-1-11.

Section 506(b) of the Bankruptcy Code, which applies to oversecured creditors, provides that for "an allowed secured claim. . . there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or Statute under which such claim arose." Section 502(a) further provides that claims are allowed if the creditor files a proof of claim and no objections are made in accordance with the permissible objections set forth in Section 502(b). In particular, § 502(b)(1) permits the Court to disallow a claim to the extent that it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." In other words, § 502(b)(1) would permit a court to disallow a claim that is invalid under state law.

With regard to § 506(b), the Debtor does not dispute that the Appellant is an oversecured creditor, that the attorney fees are reasonable, or that the fees are provided for in the loan documents under which the claim arose. The Debtor argues, however, that § 502 is applicable such that post-petition attorney fees that are actually incurred should not be allowed when O.C.G.A. § 13-1-11 would otherwise disallow the claim because of the failure to provide a 10-day notice letter. In support, the Debtor cites <u>In re Welzel</u>, 275 F.3d 1308 (11th Cir. 2001).

At issue in <u>Welzel</u> was whether contractually set attorney fees that vest pre-petition and are enforceable under O.C.G.A. § 13-1-11, because the 10-day notice letter was given, should be subject to the reasonableness standard pursuant to § 506(b), and if so, whether those fees deemed unreasonable should be disallowed or included as part of the creditors unsecured claim. <u>Id.</u> at 1310-11. The Court concluded that § 506(b) applies a reasonableness standard to all contractually set attorney fees, and that a claim for such fees should be bifurcated between secured and unsecured claims based on the amount of fees deemed reasonable. <u>Id.</u> at 1315-16.

In concluding that § 506(b) applies a reasonableness standard to all contractually set attorney fees the Court noted "the subsection does not draw a distinction between fees vested pre- or post-petition . . .. Instead, the subsection refers blanketly to 'reasonable fees,' without differentiation based on the time the fees vested." <u>Id.</u> at 1314.

6

That language, however, only spoke to the creditor's argument in that case that § 506(b) should not apply because compliance with state law before petition date, which in turn vested the contractually attorney fees, should exempt the fee arrangement from the reasonableness standard. It does not speak to whether an oversecured creditor is entitled to attorney fees actually incurred post-petition when the creditor *failed* to comply with the state law notice requirements.

Additionally, when confronting the relation between state law enforceability and § 506(b), the Court concurred with the four other circuits that have addressed the issue by concluding that contractual enforceability under state law, or lack thereof, does not negate the applicability of the § 506(b) reasonableness standard. Id. at 1315 (citing In re Sehriock Constr., Inc., 104 F.3d 200 (8th Cir. 1997); In re Hudson Shipbuilders, Inc., 794 F.2d 1051 (5th Cir. 1986); In re 268 Ltd., 789 F.2d 674 (9th Cir. 1986); In re K.H. Stephenson Supply Co., 768 F.2d 580 (4th Cir. 1985)). Importantly, two of the circuit cases cited by Welzel directly support the proposition that attorney fees actually incurred post-petition are recoverable irregardless of state law enforceability. See In re Sehriock Constr., Inc., 104 F.3d 200 (finding the plain language and legislative history of § 506(b) permit recovery of contractual attorney fees even though North Dakota law expressly voided the fees); In re K.H. Stephenson Supply Co., 768 F.2d 580 (finding, after a thorough examination of the legislative history of § 506(b), that failing to comply with a

similar North Carolina notice requirement did not void the contractual attorney fee provision).[4]

In concluding that a claim for contractually set attorney fees should be bifurcated between secured and unsecured claims based on the amount of fees deemed reasonable, the Court in <u>Welzel</u> took the analysis of § 506(b) a step further. Looking to the language and structure of §§ 502 and 506(b), the Court stated "§ 502 deals with the threshold question of whether a claim should be allowed or disallowed. Once the bankruptcy court determines that a claim is allowable, § 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured." <u>In re Welzel</u>, 275 F.3d at 1318. Debtor extrapolates this language to mean that all contractually set attorney fees, whether incurred pre- or post-petition, or whether enforceable under state law or not, must pass through the two-step inquiry of § 502 and § 506. This Court views that reading of <u>Welzel</u> as too broad.

---

[4] Describing the split of authority over the correct interpretation of § 506(b) <u>In re K.H. Stephenson Supply Co.</u>, stated "[u]nder the minority position, § 506(b) is simply a codification of pre-existing law, and consequently state law still governs attorney fee agreements," citing, inter alia, <u>In re Banks</u>, 31 B.R. 173 (Bankr. N.D. Ala. 1982). However, in <u>In re Banks</u>, the Court looked to state law only to discern the scope of the attorney fee provisions itself. As is discussed, infra, there is a subtle, yet salient difference between using state law to invalidate an otherwise valid attorney fee provision and using state law to interpret the scope of a parties contractual intentions.

As noted, supra, in Welzel the contractual attorney fees were earned pre-petition and were vested via compliance with O.C.G.A. § 13-1-11. The Court in Welzel was not confronted with whether contractual attorney fees earned post-petition must be enforceable under state law. Although not stated explicitly, Welzel left open the question of whether a distinction exists between contractual attorney fees that are not enforceable under state law and are earned pre-petition on one hand, and are those that are not enforceable under state law but earned post-petition on the other. This precise distinction was made in In re Amron Technologies, Inc., 376 B.R. 49 (Bkrtcy M.D. Ga. 2007). Viewing that distinction as consistent with both Eleventh Circuit precedent and the majority of other Circuits, this Court believes such a distinction is appropriate.

In re Amron Tecnologies, Inc., involved a debtor that underwent an involuntary bankruptcy petition. 376 B.R. at 50. An adversarial proceeding followed between the Chapter 7 Trustee and several creditors to determine the validity and extent of their security interests. Id. One such creditor filed a motion to recover its contractual attorney fees after the Bankruptcy Court determined it held a perfected security claim for the full value of the executed note. Id. After stipulating that the creditor was an oversecured creditor, that the fees were provided for by contract, that all fees were incurred post-petition and were reasonable, and that the creditor failed to comply with O.C.G.A. § 13-1-11, the Bankruptcy Court ruled the fees could still be included in the

creditors secured claim. Id. In responding to arguments similar to those presented by Debtor regarding the scope of the Welzel holding, the Bankruptcy Court there pointed out that "[t]he fees in Welzel were earned pre-petition and were fully vested via compliance with O.C.G.A. § 13-1-11 pre-petition. Thus, neither the facts nor the issue in Welzel is directly on point." Id. at 51. The Bankruptcy Court then also noted, as was discussed previously, that the Eighth Circuit, in In re Sehriock Constr., Inc., 104 F.3d 200, and the Fourth Circuit, in In re K.H. Stephenson Supply Co., 768 F.2d 580, have squarely addressed the issue and found that contractually set attorney fees earned post-petition may be valid under § 506 despite being invalid under state law. Id. at 52-53. Given that the Eleventh Circuit, in Welzel, cited the above circuits with approval, it would seem an anomaly to view the holding as, in effect, a simultaneous rejection of those cases.

Debtor relies primarily on four cases to support its broader interpretation of Welzel: In re Reorganized Lake Diamond Assoc., 367 B.R. 858 (Bankr. M.D. Fla. 2007); In re Clark, 299 B.R. 694 (Bankr. S.D. Ga. 2003); In re Jawish, 260 B.R. 564 (Bankr. M.D. Ga. 2000); and In re Kendrick, 314 B.R. 468 (Bankr. N.D. Ga. 2004). In re Reorganized Lake Diamond Assoc., involved a debtor that defaulted under the terms of a loan agreement for the purchase of a country club in Florida. 367 B.R. at 860. The debtor then filed for bankruptcy under Chapter 11 after the bank accelerated all sums

due and demanded payment in full of the promissary notes, which contained, along with other loan documents, provisions for attorney fees. Id. at 864-65. Following an unsuccessful attempt to buy the debtor's property at auction, the note holder[5] filed a motion to enforce the attorney fee provisions. Id. In refusing to award a significant portion of the requested attorney fees the Court stated,"the Court must look to the contract itself, and apply § 502 to determine what meaning the parties agreed to include in the context of 'reasonable attorneys' fees.'" The Court also looked to §§ 502 and 506 and stated that the Court "views [them] in conjunction with each other to disallow those fees under § 502 which would not be allowed by a Florida state court applying nonbankruptcy law, and to *allow the fees incurred by [the note holder] in its sincere attempts at protecting its interest in the Property, which are within the scope of the Loan Documents*." Id. at 867 (emphasis added). Thus, the Court did not view § 502 as invalidating otherwise valid attorney fee provisions, but rather looked to state law only to interpret the scope of the parties contractual intentions. The attorney fees actually incurred post-petition, and which were deemed by state law to fall within the parties mutual understanding at the time of contract, were explicitly allowed.

---

[5] The majority of the notes, and the accompanying claims on those notes, were transferred to a buyer after the filing of the bankruptcy petition. Id. at 861. This fact did not, however, affect the Courts analysis of the attorney fee provisions contained in the notes and accompanying loan documents.

In re Clark, involved a debtor that filed an adversary proceeding against an oversecured creditor alleging, inter alia, that the creditor was not entitled to attorney fees as provided for in the loan documents for failure to comply with O.C.G.A. § 13-1-11. 299 B.R. at 697. Following the §§ 502 and 506 framework enunciated in Welzel, the Court viewed the attorney fees provision as disallowed under § 502. Id. at 699-700. However, the facts of the case do not make clear whether the attorney fees sought by the creditor were incurred pre- or post-petition.[6] Assuming the fees were actually incurred post-petition, this Court disagrees with that path.

Finally, both In re Jawish, 260 B.R. 564, and In re Kendrick, 314 B.R. 468, involve unsecured creditors, not oversecured creditors, seeking contractual attorney fees. As they were unsecured creditors, § 506(b) was not implicated. Therefore, those holdings are inapposite to the present case.

**CONCLUSION**

---

[6] The facts state the foreclosure notice was sent on April 12, 2002, which informed the debtor the foreclosure would be held on May 7, 2002. Id. at 697. On May 2, 2002, the debtor filed for Chapter 13 bankruptcy. Id. On August 19, 2002 the creditor filed its Proof of Claim, which included only the debt principal, accrued pre-petition interest and late charges. Id. However, when the creditor sent the debtor a payoff statement on October 8, 2002, the facts only state that the amount included "a foreclosure/bankruptcy fee of ℤ1,060.00 and other fees." Id. The facts state neither what portion of these fees were attorney fees nor what, if any, of the portion were for attorney fees incurred post-petition.

In sum, it is the Courts conclusion that Appellant is entitled to attorney fees actually incurred after the filing of debtor's Chapter 11 petition, notwithstanding the failure to comply with the notice requirements of O.C.G.A. § 13-1-11.  Accordingly, the Court reverses the Bankruptcy Court's order denying Appellant's Motion to Pay Attorneys' Fees Pursuant to 11 U.S.C. § 506(b) and awards Appellant its requested attorney fees and expenses incurred post-petition, including the cost incurred in bringing this appeal.

**SO ORDERED**, this 21st day of September, 2008.

*s/  Hugh Lawson*

**HUGH LAWSON, Judge**

wjc

14